**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 05-4199**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

KENNETH MITCHELL,

Defendant - Appellant.

**No. 05-4200**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

BERNARD NATHANIEL CHRISTIAN,

Defendant - Appellant.

**No. 05-4259**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

RALPH K. WILLIAMS,

                                         Defendant - Appellant.

─────────────

Appeals from the United States District Court for the District of
Maryland, at Baltimore.  Catherine C. Blake, District Judge.  (CR-
03-351)

─────────────

Argued:  October 26, 2006          Decided:  March 19, 2007

─────────────

Before TRAXLER, GREGORY, and SHEDD, Circuit Judges.

─────────────

Affirmed by unpublished opinion. Judge Shedd wrote the opinion, in
which Judge Traxler and Judge Gregory joined.

─────────────

**ARGUED**: Robert Jay Feldman, Baltimore, Maryland; Arnold Christopher
Joseph, COZEN O'CONNOR, Philadelphia, Pennsylvania, for Appellants.
James G. Warwick, Assistant United States Attorney, OFFICE OF THE
UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.  **ON
BRIEF**: Peter T. Kandel, Nelson R. Kandel, KANDEL & ASSOCIATES,
P.A., Baltimore, Maryland, for Appellant Kenneth Mitchell; Harold
I. Glaser, Baltimore, Maryland, for Appellant Ralph K. Williams.
Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, for
Appellee.

─────────────

Unpublished opinions are not binding precedent in this circuit.

SHEDD, Circuit Judge:

Bernard Christian, Ralph Williams, and Kenneth Mitchell ("Defendants") were convicted by a federal jury and sentenced to 188, 235, and 360 months, respectively, for conspiracy to distribute more than five kilograms of cocaine in violation of 21 U.S.C. § 846. The Defendants now appeal their convictions and sentences. For the following reasons, we affirm.

I

The evidence at trial tended to establish that the Defendants were involved in a drug trafficking conspiracy, distributing in Baltimore drugs that originated in Los Angeles. In addition to the Defendants, the following individuals were key players in the conspiracy: Charles Ransom, Hugo Lopez, James Murphy, and Patrich Giles. The most inculpatory evidence against the Defendants was the testimony of these co-conspirators.

Law enforcement officials first discovered the conspiracy when Murphy was arrested in Baltimore in connection with a drug trafficking scheme that is unrelated to this case. Murphy cooperated with law enforcement officials, who eventually intercepted several Federal Express packages labeled for shipment from Los Angeles to Johns Hopkins Hospital in Baltimore. Many of the packages contained cocaine hidden inside empty computer cases. Christian, who serviced the Johns Hopkins route as a Federal

Express driver, was responsible for pulling these packages off the line instead of delivering them to the specified address. Sometime after these initial packages were intercepted, several additional packages containing large quantities of cash and bearing Christian's handwriting or Federal Express employee number were seized. Specifically, a Federal Express package that was addressed to Ransom and bore Christian's employee number and handwriting was damaged in transit to Los Angeles. The package was full of cash, and Ransom was arrested when he attempted to claim it. A search of Ransom's house revealed packages sent by Williams and Mitchell, in addition to vacuum-sealed bags full of cash; the bags were similar to ones previously found in Christian's garbage. The search of Ransom's house also revealed Federal Express and United Parcel Service packages that contained large amounts of cash and bore Christian's handwriting. Ransom's cooperation with law enforcement officials ultimately led to the arrest of Lopez. Giles, a partner of Murphy and Lopez, was also arrested in relation to this conspiracy.

II

The Defendants argue that the district court erred in numerous ways. We address herein only the four errors that require detailed

4

analysis.[1]  These alleged errors were raised below in the form of motions to strike or exclude testimony, requests for jury instructions, and motions for mistrial.  Accordingly, we review the district court's rulings for abuse of discretion.  United States v. Rivera, 412 F.3d 562, 572 (4th Cir. 2005) (motion to strike or exclude testimony);  United States v. Hurwitz, 459 F.3d 463, 474 (4th Cir. 2006) (request for jury instruction);  United States v. Brewer, 1 F.3d 1430, 1437 (4th Cir. 1993) (motion for mistrial).

A.

The Defendants first argue that the district court improperly applied Fed. R. Evid. 801(d)(2)(E) by admitting co-conspirators' statements to prove their participation in the drug conspiracy.[2] A significant portion of the Government's case was based on out-of-court statements made by Ransom to Lopez, Murphy, and Giles.  Such statements, which would otherwise be inadmissible hearsay under Fed. R. Evid. 801 and 802, may be admitted if the district court finds "(1) that there was a conspiracy involving the declarant and the party against whom admission of the evidence is sought and (2) that the statements at issue were made during the course of and in furtherance of that conspiracy."  United States v. Blevins, 960

---

[1]We have considered the Defendants' other arguments and find them to be without merit.

[2]We assume for the sake of argument that the Defendants' motion in limine properly preserved the objection.

5

F.2d 1252, 1255 (4th Cir. 1992); see also Fed. R. Evid. 801(d)(2)(E) (statement offered against a party is not hearsay if it is "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy").

The Defendants' chief contention is that Ransom's statements to Lopez, Murphy, and Giles were not during the course of and in furtherance of the conspiracy. These co-conspirators testified that they were not concerned with the handling of the cocaine after Ransom paid for it and took possession of it. Thus, the Defendants argue that Ransom's incriminating statements about their activity in Baltimore did not further the conspiracy.

We find the Defendants' argument unpersuasive. Ransom made the statements throughout the course of the conspiracy in reference to the specific drugs being purchased and the particular method of distribution. At the very least, these statements assured co-conspirators that a sufficient demand existed for the Los Angeles cocaine supply. Further, these statements certainly gave the Los Angeles co-conspirators peace of mind that their trafficking operation had evaded detection -- a vital concern for any illicit enterprise. We therefore hold that the district court did not abuse its discretion in admitting testimony regarding conversations between Ransom and his co-conspirators; Ransom's statements were clearly made in the course and furtherance of the conspiracy and otherwise satisfy the requirements of Rule 801(d)(2)(E).

B.

The Defendants next assert that the district court erred by refusing to instruct the jury on how properly to weigh evidence of drug conspiracies in which the Defendants did not participate, thereby causing an impermissible variance. Generally, a variance occurs when the evidence produced at trial demonstrates criminal activity materially different than the offense alleged in the indictment. United States v. Kennedy, 32 F.3d 876, 883 (4th Cir. 1994). A variance requires reversal "only if the appellant shows that the variance infringed his substantial rights and thereby resulted in actual prejudice." Id. (internal quotations omitted). In a conspiracy case, actual prejudice must be shown by demonstrating that a "spillover effect" occurred, which caused the jury to transfer evidence from one conspiracy to a defendant who participated in a different conspiracy. United States v. Ford, 88 F.3d 1350, 1360 (4th Cir. 1996).

The Defendants maintain that the Government's case proved the existence of five clearly distinct drug conspiracies, only one of which involved the Defendants. We disagree because the Defendants' theory artificially compartmentalizes a single, broad conspiracy. The five "distinct" conspiracies are nothing more than varying permutations of substantially the same players. Ransom, the Defendants' chief supplier and a primary figure in the drug ring, was involved in four of the so-called distinct conspiracies. Lopez

7

sold cocaine to Ransom, as well as directly to Williams and Mitchell, and Lopez was involved in nearly all of the drug transactions at issue in this case. Murphy and Giles were cohorts of Ransom and Lopez, and they knew that Williams and Mitchell were associates of Ransom who sold cocaine in Baltimore. Finally, everyone in the conspiracy knew that Ransom had a contact, Christian, who worked at Federal Express or United Parcel Service pulling cocaine shipments off the distribution line. Accordingly, we conclude that no variance occurred because the evidence tended to establish the existence of only one conspiracy.[3] Therefore, the district court did not err in refusing to give a multiple conspiracies instruction. See United States v. Bowens, 224 F.3d 302, 308 (4th Cir. 2000) (holding that it was not error for the district court to refuse to instruct the jury on multiple conspiracies where evidence did not support the existence of multiple conspiracies).

C.

The Defendants next contend that the district court erred in its handling of Ransom's appearance as a witness. Ransom was

---

[3]We note that Murphy's initial arrest arose out of a truly distinct conspiracy, which led him to inform authorities about the conspiracy at issue in this case. However, when evidence of the distinct conspiracy was introduced for purposes of establishing credibility, the district court gave a proper limiting instruction that prevented any spillover effect.

expected to testify against the Defendants pursuant to a plea agreement; however, after giving only minimal testimony about his relationship with the Defendants and his past experience as a drug dealer, Ransom refused to testify further. The Defendants moved for a mistrial on the basis of the prejudicial effect of Ransom's abandoned testimony. Though the district court denied the motion for mistrial, it promptly struck Ransom's testimony and instructed the jury to disregard his appearance on the witness stand.

The Defendants inaccurately characterize the district court's curative instruction as permissive instead of mandatory. Reading the instruction as a whole, the district court clearly directed the jury that they were required to disregard Ransom's brief appearance as a witness. The jury is presumed to have followed this curative instruction. Hinkle v. City of Clarksburg, 81 F.3d 416, 427 (4th Cir. 1996). Therefore, the district court did not abuse its discretion in denying the Defendants' motion for mistrial.

D.

Finally, the Defendants assert that the district court erred in denying Defendants' motion to strike or give a curative instruction due to the Government's violation of Maryland Local Rule 107.14. Maryland Local Rule 107.14 prohibits, inter alia, counsel conferring with a witness during a break in re-direct examination. Government counsel admits violating this rule by

conferring with Detective Morcomb, a witness who testified regarding summaries of documentary evidence, during an overnight recess in re-direct examination.

As the district court correctly noted, the Defendants had every opportunity to expose the Government's improper conduct in front of the jury on both re-cross examination and at closing argument. We believe that the jury could accurately determine the credibility of Morcomb, who apparently was obviously more familiar with documents after conferring with Government counsel. Further, because jurors were allowed independently to review the documents about which Morcomb was testifying, no harm resulted from any testimony given about such documents. We therefore hold that the district court did not abuse its discretion in refusing to strike Morcomb's testimony and declining to instruct jurors that they could weigh the local rule violation in their deliberations.

III

For the foregoing reasons, we affirm the convictions and sentences of the Defendants.

<u>AFFIRMED</u>